UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE GARCIA and JANA ARCHAMBEAU, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS BENENATI and LORETTA BENENATI, husband and wife and the marital community thereof; RYAN LAYTON and JANE DOE LAYTON, husband and wife and the marital community thereof; ROBERT INGRAM and JANE DOE INGRAM, husband and wife and the marital community thereof; HEATH YATES and JANE DOE YATES, husband and wife and the marital community thereof; MATT NILES and JANE DOE NILES, husband and wife and the marital community thereof; STATE OF WASHINGTON; WASHINGTON STATE PARKS AND RECREATION COMMISSION; JOHN and JANE DOES 1-20 and the marital communities thereof, and ABC CORPORATIONS 1-10,<br><br>Defendants. | No. 3:19-cv-05597-BHS<br><br>INDIVIDUAL DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: July 24, 2020 |

INDIVIDUAL DEFS' M.S.J. - 1
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

# I. INTRODUCTION

Plaintiffs Dale Garcia and Jana Archambeau have alleged Defendant Thomas Benenati, a Park Ranger employed by the Washington State Parks and Recreation Commission, violated the Fourth and Fourteenth Amendments in violation of 42 U.S.C. Section 1983 during an interaction which lead to Garcia's arrest.

In addition to related state law claims, Plaintiffs' *Complaint* also includes allegations of supervisory liability against Defendants Ryan Layton, Robert Ingram, Heath Yates, and Matt Niles (collectively "Individual Defendants"). In short, Plaintiffs allege the Individual Defendants failed to properly supervise and train Ranger Benenati.

The Individual Defendants[1] bring this motion to dismiss Plaintiffs' Section 1983 claims alleging supervisory liability on the basis of Plaintiffs' lack of evidence that their deliberate indifference to a known deficient training problem "actually caused" the alleged excessive force incident.

The facts show that Ranger Benenati was a 11-year, problem-free State Parks employee that, for whatever reason received several citizen complaints over the course of a year period between 2014 and 2015. Two of the incidents involved interacting with convicted felons/violent offenders, one of which was so notorious he was discussed in ranger training. The Individual Defendants investigated these complaints, , provided Ranger Benenati both written and verbal counseling as well as additional training.

The Individual Defendants' supervisory actions worked. The Ranger received two minor complaints shortly after the remedial action, but after further follow up by his supervisors all complaints ceased for almost three years until this incident. Defendants were entitled to believe that their actions were successful, and certainly cannot be said to be "deliberately indifferent" to any known danger posed by Ranger Benenati's performance of his duties.

---

[1] The "Jane Doe" Defendants join in this motion. They are the spouses of the named Defendants.

INDIVIDUAL DEFS' M.S.J. - 2
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

## II. STATEMENT OF FACTS

In June 2018, Park Ranger Tom Benenati was assigned to the Paradise Point State Park located adjacent to I-5 near Ridgefield, Washington (about 15 miles north of Vancouver). After receiving a report of a camper overstaying her camping pass, Ranger Benenati approached Plaintiffs' daughter. Hearing that her boyfriend had smashed the windows out of her trailer and left the park, Ranger Benenati became concerned the camper was possibly the victim of domestic violence.

While Ranger Benenati was still investigating the incident, Plaintiff Archambeau drove up to the campsite – with the boyfriend -- exceeding the park's speed limit and driving the wrong way down a one-way road. She became very upset when the Ranger told her he was issuing her two citations, claiming that her husband (Plaintiff Garcia) would "kill her" when he found out.

Plaintiff Garcia soon appeared walking quickly out of the woods. Despite Ranger Benenati's identification of himself as a law enforcement officer and instructions to stop, Garcia shoved Ranger Benenati in an attempt to confront Archambeau and the others. Garcia refused to comply with Ranger Benenati's directions as he tried to keep the family members separated. As Garcia continued to try and get around him, Ranger Benenati used gradually escalating steps including verbal commands, his hands, pepper spray, a Taser, a baton. He drew and then re-holstered his weapon and finally handcuffed and arrested Garcia. He sustained a scalp laceration and fractured wrist during the altercation.

The propriety of Ranger Benenati's conduct during the incident with Plaintiffs is not at issue for the purposes of this motion. This motion challenges Plaintiffs' lack of evidence concerning any deliberate indifference by the Individual Defendants concerning how they addressed alleged *prior* unconstitutional contacts by Ranger Benenati with other citizens.

After more than a decade on the job, Ranger Benenati's uses of force were reviewed five times in a one-year period in 2014-2015. All incidents were investigated and addressed. In February 2015, he was issued a memorandum directing him to use verbal de-escalation

INDIVIDUAL DEFS' M.S.J. - 3
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

skills, consider alternatives to force, and wait for back up. He attended remedial training courses and was closely monitored. He received two minor complaints that summer, the first involving "escorting" a driver back to his truck by holding his arm and shoulder, and the second concerning his attitude.

Additional action was taken after these last two incidents. Region Manager Layton documented "additional corrective action measures that include a training requirement to participate in a training that is specifically designed to assist officers in how they perceive things during an incident with the focus being on de-escalation." *See, infra.* There were no further complaints for the almost three years before this incident.

**2003-2014 Background of Ranger Tom Benenati**

> Ranger Benenati was hired in 2003. In 2005, he was a Tactical Communications instructor for Washington State Parks. He developed verbal communications training for all 240 state park rangers. *Exh. O to Thrasher Decl.,* PARKS 00405. This was after he had successfully completed the Verbal Judo Institute "Train the Trainer" class and was certified to teach Verbal Judo. *Exh. P Thrasher Decl.,* PARKS 00418.
>
> In his 2007 Performance Evaluation, it was noted in the Judgment box: "Tom demonstrates excellent judgement. He understands when an issue allows for discretion on the side of accommodating visitors and when strict enforcement of rules is necessary. He performs cost vs. benefit analysis and considers the impact of his choices." *Exh. Q to Thrasher Decl.,* PARKS 00565.

An outline of the incidents that led to investigations follows.[2]

**July 2, 2014    Shuey - Complaint**

> Allegation: Park visitor alleged "assault" after confronting Ranger Benenati when he declined to issue a refund for her Discover Pass purchase. *Thrasher Decl., Exh. A,* PARKS 00114-16.
>
> Ranger Benenati reported something very different. And, the incident was witnessed by his supervisor who did not see anything resembling an assault. The complainant also

---

[2] The following descriptions of incidents are not offered for the truth of the matter asserted. None of these Defendants was present during any incident. Thus this information was their only basis of knowledge and the facts upon which they based their challenged training and/or disciplinary decisions.

INDIVIDUAL DEFS' M.S.J. - 4
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

alleged that the supervisor was lying about being present. This was refuted by the SW Region Manager who was on the phone with him when he heard the Ranger call to report a disruptive visitor. The supervisor promptly hung up and responded to the scene. *Thrasher Decl., Exh. B, Benenati Report and Roberts Email*, PARKS 00101-102 ("I observed Tom's contact while I walked to the office, while I was in the office, and when I left the office. He was calm and professional while he worked through the 5 step, obtained ID, and ran it through dispatch. Shoy left without further incident."). A SW Region Manager (not Defendant Layton), oversaw the investigation and responded to the complainant as follows:

> As a result, I have determined that Ranger Thomas Benenati acted in a manner according to his training as a commissioned law enforcement officer and appropriate to the situation.

*Thrasher Decl., Exh. C,* PARKS 00082. Defendant Ryan Layton was copied on this letter.

**September 6, 2014    Herschler Complaint**

> Allegation: Used PA system to give commands to a camper who had threatened nearby campers three times, and then took him to the ground when he resisted handcuffing. Subject claimed physical injuries. Ranger Benenati was aware the subject was a convicted felon, a violent offender, and was told he had assaulted a park ranger in the past. The investigative fact finding included this:

> "Ranger Benenati stated he used force on Mr. Herschler because of the visible pre-assault indicators (i.e., red and flush face, clenched low fists, arms away from his body) which he had received training regarding, in addition to: Mr. Herschler's criminal history; his fear for his and the safety of the other park visitors; to maintain a tactical advantage; and because he had reasonable suspicion Mr. Herschler might be guilty of disorderly conduct."

*Thrasher Decl., Exh. D,* PARKS 00153 - 159.

**November 22, 2014    Letters of Praise for Traffic Stop.**

> Ranger Benenati stopped a vehicle for speeding. The driver and passenger, the City of Bothell's Deputy Chief of Police and its Assistant City Manager, sent separate letters to State Parks to praise his work:

> Once we stopped we were approached by Ranger Tom Benenati. I must say, as a person who has conducted a few thousand stops myself and witnessed

INDIVIDUAL DEFS' M.S.J. - 5
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

probably just as many, *I have never seen a more professional traffic stop*. From the introduction and the explanation of the stop through the gathering or pertinent information it was top notch.

-----------

I'm compelled to recognize him for carrying out his law enforcement duty in such an exemplary manner.

*Thrasher Decl., Exh. E,* PARKS 000400-402 (emphasis supplied).

**January 24, 2015       Schraeder Incident (No complaint)**

Use of force and Taser on visitor who resisted handcuffing in dispute over failure to purchase Discovery Pass. An independent witness stated that subject was not listening to Ranger and walked away. Ranger brought him back to his truck, and told the man to turn around to be handcuffed and he refused. "So the Ranger turned him around to be cuffed. Then the man turned around and grabbed the Ranger by the vest to fight him & the Ranger defended himself as it was necessary." *Exh. F* to *Thrasher Decl.,* PARKS 000308.

As with Mr. Heschler above, and increasingly more common in our state parks, Mr. Schraeder was a violent offender with a "use extreme caution when approaching this subject" warning to law enforcement, and arrests for obstructing a law enforcement officer, assault 3rd degree (assaulting a police officer), and, assault 4th degree (domestic violence). *Exh G to Thrasher Decl.,* PARKS 00305.

**February 5, 2015       Memorandum of Concern from Defendant Ryan Layton**

The above two incidents led SW Region Manager Layton to issue a sharply worded memorandum. His concerns included verbal skills and tone of voice, considering alternatives to force, erroring on the side of customer service rather than enforcement, and awaiting back up. He wrote in part:

"These two incidents [Herschler and Schraeder] offer some elements that we must take the opportunity to address for your safety as well as identifying what the direction of the agency is. Washington State Parks position as a law enforcement agency is not to be an agency driven solely on compliance and regulatory interests. But our goal is to utilize our law enforcement capabilities to protect our resources and provide a safe place for people to recreate as well as work. We recognize our law enforcement authority has the potential to put rangers safety at risk as well as challenge them in the work they do. These risks must be weighed against our agencies objectives and the reasons we make contacts with visitors in our parks. It is not in our interest to have visitor contacts escalate to the point of jeopardizing ranger's safety over low level contacts such as discover pass compliance when other reasonable alternatives exist."

*Thrasher Decl., Exh. H* - PARKS – 000379-80.

INDIVIDUAL DEFS' M.S.J. - 6
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

The memo concluded "[f]urther failure to abide by the expectations in this document could lead to further discipline, up to and including termination of your employment with the Washington State Parks and Recreation Commission." *Id*. Such a memo would not have been issued to a police officer. Defendant Layton is plainly stating that the State Parks "recreation" mission must be given significant weight over law enforcement issues.

After receiving this memo, Ranger Benenati attended multiple training courses designed to address these concerns.

- Parks In-Service LE Expectations-Judgment & Discretion
- Parks In-Service Verbal De-Escalation of Mentally Ill & Emotionally Disturbed People
- Parks In-Service VPLE Connections
- Parks In-Service LE Expectations-External Relations

*Thrasher Decl., Exh. I* - PARKS 000588-589. As set out below, in October Ranger Benenati also attended a course specifically on dealing with and de-escalating stressful situations. *Infra*.

**May 9, 2015    Sheldon Complaint**

> Traffic stop and citation, resulting in the driver walking back to Ranger's patrol vehicle, and then being escorted by his shoulder and arm back to his truck. No force used. Driver claims he was "shoved" back to his truck after approaching Ranger's vehicle to ask questions about a speeding citation he was just issued, and the Ranger's attitude was so poor he asked him "Does your mother know she raised an asshole?" *Exh. J to Thrasher Decl.,* PARKS 00326.

On August 13, 2015, Defendant Layton reported:

> Upon completion of the investigation I have reviewed the facts collected, I have discussed with HR, Robert, and the Area Manager. In light of all the information learned and evaluated I decided to utilize a counseling memo to address my concerns as they relate to the recent complaint and the previously issued Memo of Concern. The counseling memo was done at the park with the Area Manager following lengthy discussion and development of a pre counseling discussion outline and outcomes. ***This process resulted in the original Memo as well as the Counseling Memo being placed into his personnel file along with additional corrective action measures that include a training requirement to participate in a training that is specifically***

INDIVIDUAL DEFS' M.S.J. - 7
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

> *designed to assist officers in how they perceive things during an incident with the focus being on de-escalation and how to accomplish that.* Overall I feel the measures taken are appropriate based on the facts and I also feel *the employee is aware of the concerns and has responded in a manner that accepts responsibility, recognizes why the concerns exist and understands the need for correction.* The Area Manager has expressed some improvements in Tom since the February Memo of Understanding, these improvements identified are in direct relation to the expectations set in February, which has also been a measure in this action. As of today, Robert has rescinded the suspension of commission and the paperwork is being finalized and placed into his file. I will remain engaged with the Area Manager as well as Tom on these issues.

*Exh. K to Thrasher Decl.,* PARKS 00321 (emphasis supplied).

**August 4, 2015        Temporary Suspension of Commission (during Sheldon investigation)**

Suspended during the investigation by Defendant Ingram, copy to Defendant Layton. *Exh. L to Thrasher Decl., and Exh. A to Ingram Decl.,* PARKS 00351

**August 13, 2015        Memo Confirming Counseling Interview re: Sheldon Incident**

"I am writing to confirm the discussion we had yesterday afternoon. I called the meeting as a counseling moment in order to express my concern with your failure to meet the expectations established in the February 5, 2015 Memo of Concern that is currently located in your Supervisory File. * * *

We agreed to meet again on October 1, 2015 to review your progress. Further failure to abide by the expectations in this document could lead to further discipline, up to and including termination of your employment with the Washington State Parks and Recreation Commission."

*Exh. M to Thrasher Decl.,* PARKS 000317-18.

**August 20, 2015        Earl Complaint**

Ranger told kite flyers to leave a closed beach as they had no permit, they believed a change in law allowed the use without a permit in any area. A member filed complaint about Ranger's attitude, no touching, no force was used. *Exh. N to Thrasher Decl.,* PARKS 00373

**August 21, 2015 – June 8, 2018        *No Complaints***

**October 2015        Ranger Benenati Attends Cognitive Command Class**

Ranger Benenati also attended a full day Cognitive Command class put on by

INDIVIDUAL DEFS' M.S.J. - 8
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

the Washington Criminal Justice Training Commission (WCJTC) in October 2015. *Layton Decl.* The Commission describes the class as follows:

> "Cognitive Command Training Program (C2) C2 Training creates a system of cognitive exercises to structure how information is taken in and processed and builds response habits that are appropriate and tactically sound. The end result is officers that are mentally prepared to deal with the people and situations they will face on the street. Having habits and structured informational flow in the brain keeps officers ahead of the action/reaction curve so that they can pre-plan and take action rather than simply react. This improves use-of-force decisions, increases emotional knowledge, and ensures officers are acting on the facts at hand and not responding based on implicit biases – all positive outcomes which have been empirically documented with C2 Training." *Layton Decl.*

**May 1, 2017   Ranger Benenati Transfers to Paradise Point State Park**

Defendant Yeats became Ranger Benenati's immediate supervisor, Defendant Niles became Yeats' supervisor.

**June 8, 2018   Garcia Incident**

The incident at issue.

### III.  LEGAL ANALYSIS

**A.    Section 1983 Supervisory Liability Generally.**

Plaintiffs Complaint includes claims against four of Ranger Benenati's supervisors: Visitor Protection, Chief of Law Enforcement Robert Ingram; former Southwest Region Manager Ryan Layton; his successor Southwest Region Manager Matt Niles; and, Area Manager Heath Yeats. They were not present during the arrest incident, so they cannot be personally liable unless their supervisory actions *caused* Benenati to assault Garcia. The entirety of Plaintiffs' First Cause of Action against the Individual Defendants is this:

> The actions of the individually named and John Doe defendants were in violation of plaintiff's rights under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.
>
> The actions of the defendants were conducted with malice, and without any regard for the rights of plaintiffs.

*Complaint, Dkt*. 1, ¶ 5.4 - 5.5.

INDIVIDUAL DEFS' M.S.J. - 9
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Plaintiffs have failed to articulate what the Individual Defendants did wrong, or what action they should have been taken. However, earlier in the *Complaint* they state:

> As of June 9, 2018 Defendant BENENATI had a tendency to act with excessive force and violence and had a history of repeated improper violence towards park patrons, and said tendency and said history of violence were well known to all Defendants. Notwithstanding this knowledge, *the individual defendants failed to take appropriate steps to retrain or otherwise discipline Benenati* so as to mitigate the clear danger he presented to the public, instead maintaining him in his position as an armed Park Ranger in reckless disregard of the rights of the constitutional rights of the park-going public.

*Id*., at ¶ 4.1 (emphasis supplied). Thus, this is a failure to train or discipline case.

Supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Rather, a plaintiff must establish that each individual "through the official's own individual actions, has violated the Constitution." *Id.* In other words, supervisory officials "cannot be held liable unless they themselves" violate a constitutional right. *Id*. Supervisory liability can be imposed only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989).

**B.  Plaintiffs Cannot Establish 1) a Constitutionally Deficient Training or Discipline of Ranger Benenati, 2) that Defendants Were "Deliberately Indifferent" to This a Deficiency, or 3) that Such Indifference "Actually Caused" the Alleged Violation.**

The Supreme Court has commented several times on how difficult a failure-to-train claim is to establish. "As our precedent makes clear, proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into respondeat superior." *Connick v. Thompson,* 563 U.S. 51, 70 (2011) (citations omitted).

INDIVIDUAL DEFS' M.S.J. - 10
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Ranger Benenati attended the Ranger Law Enforcement Academy in 2003. From then until his first complaint in 2014, he attended numerous hours of training. His conduct was never complained of during the first 11 years of his employment.

During the timeframe when he received citizen complaints (2014-2015), he was closely supervised by SW Region Manager Ryan Layton. Defendant Layton oversaw the investigations, and even reviewed an incident from which no complaint was made. He issued Ranger Benenati a *Memorandum of Concern* that advised him that future incidents could result in discipline including termination. Ranger Benenati was sent to hours of remedial training. When two subsequent minor incidents occurred, his supervisors conducted further investigations, Ranger Benenati attended additional counseling, and he received a follow up memo once again threatening discipline. Following these additional corrective measures, State Parks did not receive any additional complaint concerning Ranger Benenati for almost three full years.

### 1. Plaintiffs Cannot Prove Inadequate Training or Discipline.

To succeed in their claims against the Individual Defendants, Plaintiffs must first prove State Parks had a defective training or disciplinary program. "Without identifying the training and hiring practices, how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149–50 (E.D. Cal. 2009). *See McFarland v. City of Clovis*, 163 F.Supp.3d. 798, 803 (E.D. Cal. 2016) ("Simply alleging that training is 'deficient' or 'inadequate' is conclusory and does not support a plausible claim.").

Plaintiffs must come up with specific facts of a *significant* deficiency that wholly failed to address the problem. "These 'circumstances' generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not

INDIVIDUAL DEFS' M.S.J. - 11
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

trained about 'the specific scenario related to the violation.' " *Hanna ex rel. Henderson v. Cty. of Fresno,* 2014 WL 6685986, at *13 (E.D. Cal. Nov. 26, 2014).[3]

"Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). The plaintiff must establish that the supervisor believed that "if he allowed [the officer] to return to active duty, [he] would continue to" re-offend. *Clancy v. McCabe*, 805 N.E.2d 484, 492 (Mass. 2004).

"[F]or example, a sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or ***purposely disregarded*** the conduct.' *Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994) (citing *Larez v. Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (emphasis supplied).

Plaintiffs cannot prove this element. At best they can quibble with the level of the response. They could argue Ranger Benenati "should have had a little more, or a little different, training." But this does not violate the high constitutional standard or "shock the conscience." The same is true for the level of discipline. Plaintiffs might argue Ranger Benenati should have been suspended without pay instead of receiving counseling and retraining. Again, this is a quibble over nuance. Ranger Benenati was a 13 year employee of State Parks with no prior problems and his supervisors had knowledge concerning the best methods to use in order to effectuate a change in his behavior. And they did. Three years elapsed without another citizen complaint filed against Ranger Benenati. Plaintiffs cannot meet their burden to prove the Individual Defendants' discipline and training actions were deficient.

---

[3] The failure to train "concept in the context of a claim for municipal liability … has equal applicability to supervisory individual-capacity liability." *Jarbo v. Cty. of Orange*, SACV 05-00202-JVS, 2010 WL 3584440, at *14 (C.D. Cal. Aug. 30, 2010).

INDIVIDUAL DEFS' M.S.J. - 12
3:19-cv-05597-BHS
1039-00012/498392

**KEATING, BUCKLIN & MCCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

## 2. Plaintiffs Cannot Show Deliberate Indifference That "Shocks the Conscience."

To prevail on a substantive due process claim under the Fourteenth Amendment, Plaintiffs must show that an officer's conduct "shocks the conscience." *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), *cert. denied,* 562 U.S. 1219 (2011) ("Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience."). See, *Nicholson v. City of Los Angeles*, 935 F.3d 685, 694 (9th Cir. 2019) (applying deliberate indifference standard).

To hold the Individual Defendants liable, Plaintiffs must show that they were "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014) (*citing Connick v. Thompson*, 563 U.S. 51 (2011)). Under this standard, Plaintiffs must point to facts that show that they "disregarded the known or obvious consequence that a particular omission in their training program would cause [Ranger Benenati] to violate citizens' constitutional rights*." Id.*, at 1159. *Connick, supra* at 1360 (defendants must have "disregarded the known or obvious consequence that a particular omission in their training program would cause county employees to violate citizens' constitutional rights.").

Here, Ranger Benenati had years of training and performed his duties over the course of more than a decade without receiving complaints. When he did receive a complaint, his supervisors investigated and addressed it. Responsive action also included remedial training. Shortly thereafter a single incident – physically escorting a driver back to his truck – was addressed with further counseling. After receiving one additional complaint about his attitude in August 2015, Ranger Benenati completed his work over almost three more years without a single complaint.

Some of the factors courts have taken into account include whether the prior conduct was of "short duration," whether the agency "conducted an investigation," during which the officer's "police powers were revoked," and whether the employee "was subsequently

INDIVIDUAL DEFS' M.S.J. - 13
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

counseled". *McRae v. Olive*, 368 F. Supp. 2d 91, 96 (D.D.C. 2005). All of those factors exist here.

Here, after 13 years on the job Ranger Benenati went through a 13-month period where he experienced several citizen complaints. Each was investigated and addressed with counseling, written documentation and follow up training. Defendants' responses were appropriate. They do not come close to "conscience shocking" behavior.

### 3. The Individual Defendants Did Not "Actually Cause" the Alleged Violation.

Deliberate indifference and actual causation are separate elements.[4] Plaintiffs must prove "that the lack of training actually caused the [constitutional] violation in this case." *Connick v. Thompson,* 563 U.S. 51, 59 (2011). "The requisite causal connection can be established ... by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca,* 652 F.3d 1202, 1207–08 (9th Cir.2011).

The cases hold that a plaintiff cannot prevail showing "but for" causation. That is, Plaintiffs cannot argue that Ranger Benenati had been fired, he would not have been working on June 8, 2019, and the incident would not have occurred. That proof is too simplistic and would result in automatic liability in every case. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *City of Canton v. Harris,* 489 U.S. 378, 391 (1989). In one case the plaintiff merely alleged

---

[4] "Because we conclude that Thompson failed to prove deliberate indifference, we need not reach causation. Thus, we do not address whether the alleged training deficiency, or some other cause, was the "'moving force,' " that "actually caused" the failure to disclose the crime lab report[.]" *Connick v. Thompson,* 563 U.S. 51, 59 (2011).

INDIVIDUAL DEFS' M.S.J. - 14
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

the defendants' actions would not have occurred "but for" a failure to train and/or supervise. "This type of reasoning has been rejected by the courts so as to avoid a strict respondeat superior liability for municipal entities." *Ramirez v. Clark Cty.,* 2011 WL 3022406, at *3 (D. Nev. 2011).

Plaintiffs here cannot show any action "actually caused" this incident.

### 4. A Review of The State Parks' Organizational Structure of and the Roles and Actions of the Individual Defendants.

The park rangers of Washington State Parks are part of the agency's Field Operations, which is divided into three regions: Eastern, Northwest and Southwest. Here, the incident at issue, and the Ranger's prior assignments, were all in the SW Region. The park where this incident occurred, Paradise Point, is in the Southwest Region, in the Battle Ground Lake Area that includes two other parks. At the time of the incident at issue, June 2018, Ranger Benenati was the Operations Manager for Paradise Point Park, under Area Manager Heath Yeats, who reported to Region Manager Matt Niles. However, he had been under a different supervisor when the complaints occurred in 2014-2015. These last two supervisors had no involvement in those matters. Prior to May 2017, Ranger Benenati was also in the Southwest Region. However, he was primarily stationed at Cape Disappointment Park.[5]

#### a. Area Manager Heath Yeats: 2017-2018

Defendant Yeats did not become Ranger Benenati's direct supervisor until May 1, 2017, when he transferred to a state park under Defendant Yeats' oversight. *Yeats Decl.* State Parks did not receive any incidents or complaints about Ranger Benenati while Defendant Yeats supervised him. There is no basis to hold Defendant Yeats liable under a theory of supervisor liability.

#### b. Region Manager Matt Niles: 2016-2018

Defendant Matt Niles did not become SW Region Manager until January 1, 2016. Defendant Niles had no responsibility over Ranger Benenati until this time, which was more

---

[5] *See* declarations of Ingram, Layton, Niles and Heath.

INDIVIDUAL DEFS' M.S.J. - 15
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

than four months after the last complaint (August 2016). *Niles Decl.* There were no force complaints while Benenati was in his region, until the Garcia incident in June 2018. The prior incidents had all been investigated and resolved by the prior Region Manager in 2014-2015. There is no basis to assert his liability.

### c. Region Manager Ryan Layton: 2014-2015

Defendant Layton was the Southwest Region Co-Manager in 2014 and 2015 when State Parks first received complaints about Ranger Benenati. Defendant Layton investigated the complaints, held several counselling sessions with Ranger Benenati, issued counseling memos, and provided remedial training. *Layton Decl.* After the first memo, State Parks received a complaint over a minor incident (hands on arm and shoulder returning driver to vehicle). Soon thereafter a member of a kite flying group complained about Ranger Benenati's attitude while advising them they needed a permit for an event. In response, Defendant Layton held additional meetings and counseling sessions with Ranger Benenati.

State Parks did not receive another complaint about Ranger Benenati during the almost three years period from August 2015 to June 2018 due, in part, to Defendant Layton's proper performance of his supervisory duties. His actions met the standard of care – counseling and training until the issue is resolved – and can hardly be described as "deliberately indifferent" to an obvious need. In fact, he saw a need for additional counseling and training and provided it. While Ranger Benenati had two minor complaints regarding his attitude shortly thereafter, additional counseling and the threat of discipline ended the complaints.

There is no basis to hold Defendant Layton liable. *See, e.g., Ottman v. City of Indep., Mo.,* 341 F.3d 751, 761 (8th Cir. 2003) (holding no deliberate indifference because supervisor addressed the issue and was not told that the conduct continued).

> The undisputed facts establish that, after Ottman complained to Hahl of Richardson's sexual harassment, Hahl met with Richardson to discuss Ottman's complaints and later revisited the issue in Richardson's performance evaluations. The fact is also undisputed that, after Hahl met

INDIVIDUAL DEFS' M.S.J. - 16
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

with Richardson concerning Ottman's complaint, Ottman never told Hahl that Richardson continued to harass her. Even if Hahl's actions ultimately proved "ineffectual" in curbing Richardson's harassing conduct, Hahl's actions do not demonstrate deliberate indifference. Therefore, Hahl is entitled to qualified immunity.

*Id*.

### d. Chief of Law Enforcement Robert Ingram: 2014-2018

Defendant Ingram is the Chief of the Law Enforcement unit and oversees that part of the agency's mission. He did not supervise Ranger Benenati, his supervisors or their supervisors. His unit coordinates and conducts training, but does not identify rangers in need of training or direct individual rangers to attend specific training courses. Defendant Ingram was aware of complaints made against Ranger Benenati and the subsequent investigations, counseling and training provided by SW Region Manager Layton. *Ingram Decl*. Defendant Ingram was aware of Defendant Layton's actions, but had no involvement in the investigations or responses as he had no authority to discipline Ranger Benenati or direct him to attend training.

A plaintiff must identify an obligation to supervise an employee. One fedral court dismissed a supervisory liability claim because the plaintiff provided no evidence yjat the supervisor "had a duty to oversee a pending investigation into an incident of alleged officer misconduct, to discover the results of such an investigation, or to discipline officers upon resolution of an investigation." *Byrd v. D.C.,* 297 F. Supp. 2d 136, 142 (D.D.C. 2003), *aff'd sub nom*., 2004 WL 885228 (D.C. Cir. 2004). "Furthermore, given [the supervisor's] undisputed testimony that he was aware of the allegations in this case, believed that the incident should be investigated, and indeed thought that there was an ongoing investigation, it cannot be argued that he was guilty of the level of 'deliberate indifference' required for the imposition of supervisory liability." *Id*.

As discussed above, Defendant Layton's response was more than adequate and in no way evidenced deliberate indifference. As Defendant Ingram's responsibilities did not supervise Ranger Benenati, he bears no liability.

INDIVIDUAL DEFS' M.S.J. - 17
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

**C. All Defendants Are Entitled to Qualified Immunity.**

Because supervisory liability is personal liability, an official against whom a claim of supervisory liability is advanced may assert the affirmative defense of qualified immunity. *al-Kidd v. Ashcroft,* 580 F.3d 949, 963–65 (9th Cir.2009).

> Because *Iqbal* requires courts to apply an equivalent standard to supervisors and subordinates, we hold that, taking qualified immunity into account, a supervisor faces liability under the Fourth Amendment only where "it would be clear to a reasonable [supervisor] that his conduct was unlawful in the situation he confronted." A lower standard would impose vicarious liability on supervisors based on their subordinates' clearly unlawful conduct.

*Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012).

The qualified immunity standard is generous. It gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v Bryant*, 502 U.S. 224, 229 (1991).

Here, there is no case law that Defendants have located that holds that a supervisory defendant's actual actions of intervening in an employee's workplace conduct, investigating complaints, conducting counseling and retraining, can to rise to the required level of "shocks the conscience" by deliberate indifference. Plaintiffs' claim is primarily second-guessing earnest decisions. Almost all of the cases located were dismissals of lawsuits at the pleading stage for not alleging *any* facts, or not alleging that a specific training class was needed, or a wholesale failure to impose any discipline. *See, e.g., Ramirez, supra* ("the plaintiff offers only conclusory statements that CCDC's training and supervision were deficient.").

It is Plaintiffs' burden to prove a clearly established and specific right. "If the plaintiff cannot meet this burden, the inquiry ends and defendants are entitled to summary judgment." *Sepatis v. City and County of San Francisco,* 217 F.Supp.2d 992, 997 (N.D.Cal.2002).

INDIVIDUAL DEFS' M.S.J. - 18
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

Here, Plaintiffs need to cite caselaw that has held a supervisor liable under the due process standard for affirmatively taking substantial action (that the plaintiff only second guesses) that was allegedly ineffective to prevent the violation. One can always say in retrospect that "more could have been done," or "one more class should have been taken," or "he should have been suspended not reprimanded." But, negligence is not the standard, nor is gross negligence or even recklessness.[6] In this case, where the Individual Defendants had no involvement in the incident with Plaintiffs, and where prior complaints against Ranger Benenati were properly investigated and addressed, each of the Individual Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the above reasons, the Court should grant the Individual Defendants' motion and dismiss them from this lawsuit with prejudice.

DATED: July 2, 2020

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: */s/ Stewart A. Estes*
Stewart A. Estes, WSBA #15535
Special Assistant Attorney General for Defendants
801 Second Avenue, Suite 1210
Seattle, WA 98104
Phone: (206) 623-8861
Fax: (206) 223-9423
Email: sestes@kbmlawyers.com

---

[6] "Mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under [§] 1983." *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988).

INDIVIDUAL DEFS' M.S.J. - 19
3:19-cv-05597-BHS
1039-00012/498392

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

# CERTIFICATE OF SERVICE

I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**

Mark Leemon, WSBA #5005
Leemon + Royer, PLLC
403 Columbia Street, Suite 500
Seattle, WA 98104
Tel: 206-269-1100
Fax: 206-269-7424
Email: leemon@leeroylaw.com
diane@leeroylaw.com

**Attorneys for Plaintiffs**

Thomas B. Vertetis, WSBA # 29805
Pfau Cochran Vertetis Amala, PLLC
911 Pacific Ave. Ste. 200
Tacoma, WA 98402
Tel: 253-777-0799
Fax: 253-627-0654
Email: tom@pcvalaw.com
jeanne@pcvalaw.com

DATED: July 2, 2020

*/s/ Stewart A. Estes*
Stewart A. Estes, WSBA #15535

INDIVIDUAL DEFS' M.S.J. - 20
3:19-cv-05597-BHS
1039-00012/498392

**KEATING, BUCKLIN & MCCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423